## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THE PARISH OF PLAQUEMINES,** | * | **CIVIL ACTION** |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | **NO.** |
| | * | |
| **TOTAL PETROCHEMICALS &** | * | **JUDGE** |
| **REFINING USA, INC., BP AMERICA** | * | |
| **PRODUCTION COMPANY,** | * | **MAGISTRATE JUDGE** |
| **BURLINGTON RESOURCES OIL &** | * | |
| **GAS COMPANY LP, CHEVRON** | * | |
| **U.S.A. INC., CLAYTON WILLIAMS** | * | |
| **ENERGY, INC., DELTA** | * | |
| **DEVELOPMENT COMPANY, INC.,** | * | |
| **DEVON ENERGY PRODUCTION** | * | |
| **COMPANY, L.P., DIMENSION** | * | |
| **ENERGY COMPANY, L.L.C.,** | * | |
| **PIONEER NATURAL RESOURCES** | * | |
| **USA, INC., JUNE ENERGY, INC.,** | * | |
| **EXXON MOBIL CORPORATION,** | * | |
| **SHELL OFFSHORE INC., SHELL** | * | |
| **OIL COMPANY, CHEVRON U.S.A.** | * | |
| **HOLDINGS INC., TEXAS** | * | |
| **PETROLEUM INVESTMENT** | * | |
| **COMPANY, ANADARKO E&P** | * | |
| **ONSHORE, LLC, CHEVRON** | * | |
| **PIPELINE COMPANY, THE TEXAS** | * | |
| **COMPANY, AND LLOG** | * | |
| **EXPLORATION & PRODUCTION** | * | |
| **COMPANY, L.L.C,** | | |
| | | |
| **Defendants.** | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>NOTICE OF REMOVAL</u>

  **NOW INTO COURT,** through undersigned counsel, come Defendants, BP America

Production Company, Burlington Resources Oil & Gas Company LP, Chevron U.S.A. Inc.,

Exxon Mobil Corporation, Shell Offshore, Inc., Shell Oil Company, Chevron U.S.A. Holdings

Inc., Chevron Pipe Line Company, and The Texas Company (the "Removing Defendants"), and

with a full reservation of rights, defenses, objections, and exceptions, hereby remove to this Court the civil action in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, entitled *The Parish of Plaquemines v. Total Petrochemicals & Refining USA, Inc., BP America Production Company, Burlington Resources Oil & Gas Company LP, Chevron U.S.A. Inc., Clayton Williams Energy, Inc., Delta Development Company, Inc., Devon Energy Production Company, L.P., Dimension Energy Company, L.L.C., Pioneer Natural Resources USA, Inc., June Energy, Inc., Exxon Mobil Corporation, Shell Offshore Inc., Shell Oil Company, Chevron U.S.A. Holdings Inc., Texas Petroleum Investment Company, Anadarko E&P Onshore, LLC, Chevron Pipeline Company, The Texas Company, and LLOG Exploration & Production Company, L.L.C.*, Civil Action No. 61-002, Division "A" ("the Petition").

## INTRODUCTION AND OVERVIEW OF GROUNDS FOR REMOVAL

1.      This Court is a proper venue because the Parish of Plaquemines (the "Plaintiff") filed the Petition in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, and the United States District Court for the Eastern District of Louisiana is the district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).

2.      Pursuant to 28 U.S.C. § 1446(a), the Removing Defendants attach hereto as Exhibit "A" *in globo* a copy of all process, pleadings, and orders served upon them in this action as well as a copy of all process, pleadings, and orders available in the state court record.

3.      BP America Production Company was served with a copy of the Petition on November 21, 2013.  Burlington Resources Oil & Gas Company LP was served with a copy of the Petition on November 22, 2013.  Chevron U.S.A. Inc. was served with a copy of the Petition on November 22, 2013.  Exxon Mobil Corporation was served with a copy of the Petition on November 22, 2013.  Chevron U.S.A. Holdings Inc. was served with a copy of the Petition on November 25, 2013.  Shell Offshore, Inc. was served with a copy of the Petition on November

21, 2013. Shell Oil Company was served with a copy of the Petition on November 21, 2013. Chevron Pipe Line Company was served with a copy of the Petition on November 22, 2013. The Texas Company was served with a copy of the Petition on November 22, 2013. Accordingly, this Notice of Removal is being filed within thirty days after the receipt by the Removing Defendants, through service or otherwise, of a copy of the Petition and is therefore timely filed in accordance with 28 U.S.C. § 1446(b).

4.     All Defendants that have been named in this action and served at the time of the filing of this Notice of Removal have consented, in writing, to removal of the action. Those consents are attached hereto as Exhibit "B" *in globo*. Out of an abundance of caution, written consents that were obtained from Defendants who upon information and belief have not been served at the time of the filing of this Notice of Removal are attached hereto as Exhibit "C."

5.     Pursuant to 28 U.S.C. § 1446(d), undersigned counsel certifies that, promptly after the filing of this Notice of Removal, copies of the Notice will be served on opposing counsel and filed with the Clerk of Court of the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, as provided by law, to effect the removal of the state court action.

6.     This case is removable because:

a.     Diversity jurisdiction under 28 U.S.C. § 1332 exists as between the Plaintiff and the diverse Defendants identified below because the Plaintiff has improperly joined the non-diverse Defendants in this matter in an attempt to defeat diversity jurisdiction;

b.     This action arises "in connection with" oil and gas operations conducted on the Outer Continental Shelf;

c.     The Petition asserts general maritime claims;

      d.     Though labeled as a suit by the Plaintiff, this case is in substance a "mass action" under the Class Action Fairness Act ("CAFA").  The Petition seeks damages, restoration and remediation costs relative to land owned not by the Plaintiff, but rather by individual landowners in Plaquemines Parish ("the landowners").  As there are more than 100 such landowners who are real parties in interest, this case is properly removed as a "mass action" under CAFA;

      e.     This action arises out of conduct in a federal enclave, *i.e.*, the Delta National Wildlife Refuge, over which the federal courts have jurisdiction; and

      f.     28 U.S.C. § 1331 and the Natural Gas Act provide federal jurisdiction where, as here,  a plaintiff seeks relief from a natural gas company that has been engaged in operations under, and in compliance with, the Natural Gas Act and other federal statutes.

### GROUNDS FOR REMOVAL

**I.**     **Removal of this Action is Proper Because this Court has Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction).**

      7.     This suit is a civil action over which this Court has original subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332 (diversity jurisdiction), and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states as to the diverse Defendants identified below.  Although Plaintiff has named some non-diverse Defendants, as explained below, the claims against them cannot be considered for purposes of determining diversity jurisdiction because they have been improperly joined with the claims against the diverse Defendants.  This follows from the fact that Plaintiff attempts to bring in one suit enforcement actions against different Defendants, on different permits, corresponding to different activities, at

different locations, at different times.  As a result, the claims against the various Defendants have

no real connection to each other and, moreover, the various Defendants cannot be – and indeed,

are not even alleged to be – jointly and severally liable.[1]

### A.    Complete Diversity of Citizenship

#### 1.    Plaintiff

8.    The Plaintiff, the Parish of Plaquemines, is a citizen of Louisiana.

9.    To the extent the Plaintiff purports to name the State of Louisiana as an additional

party plaintiff, such attempt is improper, as the State and Local Coastal Resources Management

Act of 1978, and more specifically La. R.S. 49:214.36(D), does not provide the Plaintiff with the

authority to bring an action in the name of the State of Louisiana.  *See, e.g.*, *Gastel v. McGenty*,

20 La. Ann. 431, 432 (La. 1868) (holding that the Levee Commissioners could not intervene in a

suit in the name of the State because "[t]he act of the Legislature confirming and ratifying the

Levee Commissioners . . . and continuing them in their functions . . . did not give them authority

to sue for the State.   There is no act giving them such authority, and they cannot, by intervening

in a suit, make the State a party thereto."); *State v. Gulfport Energy Corp.*, 12-356 (La. App. 3

Cir. 11/7/12), 2012 La. App. LEXIS 1384, at *6-10 (finding that the Louisiana Department of

Wildlife and Fisheries had neither express nor implied statutory authority to bring the action on

behalf of the State).

10.    Alternatively, even assuming that the Plaintiff has the right to bring this action in

the name of the State as an additional party (which the Removing Defendants deny), upon

---

[1]    As evidenced by the consents attached hereto, each non-removing diverse Defendant from whom consent has been obtained agrees that for the reasons set forth herein, the claims at issue in this lawsuit were improperly joined, and each Defendant – diverse or non-diverse – should have been sued separately.  To avoid an abundance of duplicative filings, and for the convenience of the Court, those non-removing diverse Defendants have consented to the instant Notice of Removal as opposed to filing individual notices on this ground.

information and belief, the private counsel purporting to represent the State have not been appointed to do so by the attorney general with the concurrence of the commissioner of administration in accordance with the mandatory procedure set forth in La. R.S. 49:258.[2]

11.    Accordingly, at the time of the filing of this Notice of Removal, the State of Louisiana is not a proper plaintiff in this lawsuit.

### 2.    Defendants

#### a.    Diverse Defendants

12.    Defendant Total Petrochemicals & Refining USA, Inc., upon information and belief, is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in Texas.  Therefore, Defendant Total Petrochemicals & Refining USA, Inc., is and was a citizen of Delaware and Texas.

13.    Defendant BP America Production Company is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in Texas.

---

[2]    La. R.S. 49:258 provides in pertinent part:

Notwithstanding the provisions of any other law to the contrary and specifically the provisions of any law that authorizes the state or a state agency to appoint, employ, or contract for private legal counsel to represent the state or a state agency, including but not limited to the provisions of R.S. 42:261, 262, and 263, and R.S. 40:1299.39(E), *any appointment of private legal counsel to represent the state or a state agency shall be made by the attorney general with the concurrence of the commissioner of administration in accordance with the following procedure:*

(1)  All attorneys appointed as private legal counsel to represent the state or a state agency shall meet or exceed written minimum qualifications and all appointments shall be made in accordance with a written appointments procedure, both of which shall be established by the attorney general and the governor, or their designees.  The commissioner of administration shall participate in the preparation of the minimum qualifications and the appointment procedure.  The minimum qualifications and the appointments procedure shall be published at least annually in the Louisiana Bar Journal or such other publication as will reasonably assure dissemination to the membership of the Louisiana State Bar Association.  The exercise of the authority provided in this Section shall not be subject to the Administrative Procedure Act.

(2)  All appointments of private legal counsel representing the state or a state agency that are in effect on the effective date of this Section shall be reviewed to ensure that such counsel satisfy the minimum qualifications provided for in Paragraph (1) of this Section and all such changes in or terminations of such appointments shall be made as are necessary to ensure such compliance. (Emphasis added).

Therefore, Defendant BP America Production Company is and was a citizen of Delaware and Texas.

14.    Defendant Burlington Resources Oil & Gas Company LP is now, and was at the time of the filing of the Petition, a Delaware limited partnership with its principal place of business in Texas.   Therefore, Defendant Burlington Resources Oil & Gas Company LP is and was a citizen of Delaware and Texas.

15.    Defendant Chevron U.S.A. Inc. is now, and was at the time of the filing of the Petition, a Pennsylvania corporation with its principal place of business in California.  Therefore, Defendant Chevron U.S.A. Inc. is and was a citizen of Pennsylvania and California.

16.    Defendant Clayton Williams Energy, Inc., upon information and belief, is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in Texas.  Therefore, Defendant Clayton Williams Energy, Inc., upon information and belief, is and was a citizen of Delaware and Texas.

17.    Defendant Devon Energy Production Company, LP, upon information and belief, is now, and was at the time of the filing of the Petition, an Oklahoma limited partnership whose sole general partner is DVN Operating Company, LLC.  DVN Operating Company, LLC is a Delaware limited liability company whose sole member is Devon OEI Operating, LLC.  Devon OEI Operating, LLC is a Delaware limited liability company whose sole member is Devon OEI Holdings, LLC.  Devon OEI Holdings, LLC, upon information and belief, is a Delaware limited liability company whose sole member is Devon Energy Corporation (Oklahoma), an Oklahoma corporation with its principal place of business in Oklahoma.   Therefore, Defendant Devon Energy Production Company, LP, upon information and belief, is and was a citizen of Oklahoma.

18.    Defendant Pioneer Natural Resources USA, Inc., upon information and belief, is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in Texas.  Therefore, Defendant Pioneer Natural Resources USA, Inc., upon information and belief, is and was a citizen of Delaware and Texas.

19.    Defendant Exxon Mobil Corporation is now, and was at the time of the filing of the Petition, a New Jersey corporation with its principal place of business in Texas.  Therefore, Defendant Exxon Mobil Corporation is and was a citizen of New Jersey and Texas.

20.    Defendant Shell Offshore, Inc., is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in Texas.  Therefore, Defendant Shell Offshore, Inc. is and was a citizen of Delaware and Texas.

21.    Defendant Shell Oil Company, is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in Texas.  Therefore, Defendant Shell Oil Company is and was a citizen of Delaware and Texas.

22.    Defendant Chevron U.S.A. Holdings Inc., is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in California. Therefore, Defendant Chevron U.S.A. Holdings Inc. is and was a citizen of Delaware and California.

23.    Defendant Texas Petroleum Investment Company, upon information and belief, is now, and was at the time of the filing of the Petition, a Texas corporation with its principal place of business in Texas.  Therefore, Defendant Texas Petroleum Investment Company, upon information and belief, is and was a citizen of Texas.

24.    Defendant Anadarko E&P Onshore, LLC, upon information and belief, is now, and was at the time of the filing of the Petition, a Delaware limited liability company whose sole

member is Anadarko Petroleum Corporation.  Upon information and belief, Anadarko Petroleum Corporation is a Delaware corporation with its principal place of business in Texas.  Therefore, Defendant Anadarko E&P Onshore, LLC, upon information and belief, is and was a citizen of Delaware and Texas.

25.    Defendant Chevron Pipe Line Company is now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in California. Therefore, Defendant Chevron Pipe Line Company is and was a citizen of Delaware and California.

26.    Defendant The Texas Company is now, and was at the time of the filing of the Petition, a Texas corporation with its principal place of business in New York.  Therefore, Defendant The Texas Company is and was a citizen of Texas and New York.

27.    Defendant LLOG Exploration & Production Company, LLC, is now, and was at the time of the filing of the Petition, a Louisiana limited liability company whose sole member is LLOG Exploration Company, LLC.  Upon information and belief, LLOG Exploration Company, LLC's sole member is LLOG Holdings, LLC, a Louisiana limited liability company.  In turn and upon information and belief, LLOG Holdings, LLC's sole member is Gerald A. Boelte, a Mississippi domiciliary.  Therefore, Defendant LLOG Exploration & Production Company, LLC, upon information and belief, is and was a citizen of Mississippi.

<b>b.    Non-diverse Defendants</b>

28.    Defendant Delta Development Company, Inc., upon information and belief, is now, and was at the time of the filing of the Petition, a Louisiana corporation with its principal place of business in Louisiana.  Therefore, Defendant Delta Development Company, Inc., upon information and belief, is and was a citizen of Louisiana.

29.     Defendant Dimension Energy Company, LLC, upon information and belief, is now, and was at the time of the filing of the Petition, a Louisiana limited liability company whose members are, upon information and belief, Charles A. O'Niell, III, domiciled in Texas; James H. Tindall, domiciled in Texas; and David Daly, domiciled in Louisiana.   Therefore, Defendant Dimension Energy Company, LLC, upon information and belief, is and was a citizen of Louisiana and Texas.

30.     Defendant June Energy, Inc., upon information and belief, is now, and was at the time of the filing of the Petition, a Louisiana corporation with its principal place of business in Louisiana.   Therefore, Defendant June Energy, Inc., upon information and belief, is and was a citizen of Louisiana.

31.     Plaintiff commenced this action against nineteen separate oil and gas exploration and production companies, alleging that their operations and activities were conducted in violation of the State and Local Coastal Resources Management Act of 1978, as amended, and the applicable regulations, rules, orders and ordinances promulgated or adopted thereunder by the State or Plaquemines Parish (the "CZM laws").   Petition, ¶ 3.   Plaintiff purports to expressly limit its claims in this lawsuit to the enforcement of the CZM laws, pursuant to La. R.S. 49:214.36(D), which Plaintiff alleges provides it the authority to bring "such injunctive, declaratory, or other actions as are necessary to ensure that no uses are made of the coastal zone for which a coastal use permit has not been issued when required or which are not in accordance with the terms and conditions of a coastal use permit."   Petition, ¶¶ 10, 33.   Further, Plaintiff expressly alleges that it makes no claims under Louisiana tort law, contract law, mineral law, or property law, among other restrictions.   Petition, ¶ 33(t).   Accordingly, Plaintiff's lawsuit was designed by Plaintiff to be strictly a permit enforcement action brought against nineteen separate

entities, which engaged in distinct activities, at various times, under (or allegedly in the absence of) individually held permits.[3]

32.     Notably, Plaintiff's institution of this lawsuit is premature in contravention of the very CZM laws and regulations Plaintiff purports to enforce.  The Plaquemines Parish Coastal Zone Management Program explicitly requires that, if Plaintiff believes a permit violation has occurred, it must take administrative action before bringing suit.  *See* 2013 Coastal Zone Management Program Update to the Plaquemines Parish Coastal Zone Management Program at § 1-32 ("Any person, department, agency, or corporation may report violations to the CZM Administrator.  The first step taken by the CZM Administrator after notification is to contact the permittee and attempt to alleviate the problem. If the permittee is uncooperative and/or the violation is of a serious nature, the CZM Administrator must take the matter to the Committee and/or Plaquemines Parish Council. If the violation is not resolved at this stage, the violator can be prosecuted."); *see also* Plaquemines Parish Coastal Zone Management Program, at § 7-8 (same).[4]  This administrative proceeding, bypassed by Plaintiff, does not allow for multiple permit violations to be joined together, let alone for multiple permit violations against multiple defendants to be joined together.

**B.     Improper Joinder**

33.     The misjoinder theory that makes removal based on diversity jurisdiction appropriate in this matter was established in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353

---

[3]     A list of the coastal use permits issued for work in the area at issue is attached to the Petition as Exhibit D.  The Exhibit identifies 1018 permits.

[4]     Plaintiff relies on La. R.S. 49:214.36 as its supposed authorization to bring suit against Defendants, but cites this provision in a vacuum.  Enforcement actions under § 214.36 are premature until administrative proceedings have been completed. *See* LAC 43:I.723.D(4) ("___If___ the permittee fails to comply with a cease and desist order or the suspension or revocation of a permit, the permitting body shall seek appropriate civil and criminal relief as provided by § 214.36 of the [State and Local Coastal Resources Management Act].") (emphasis added).

(11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000), wherein the Eleventh Circuit recognized that improper joinder may have occurred where a diverse defendant is joined with a non-diverse defendant with whom it does not have joint, several, or alternative liability, and the claims have no real connection to each other. Under *Tapscott*, egregious misjoinder of actions with no real connection to each other constitutes improper joinder under federal law.  77 F.3d at 1360.  The Fifth Circuit has recognized the *Tapscott* rule of improper joinder, and this District has applied it often, finding removal proper where a plaintiff joins unrelated claims that include non-diverse defendants in order to defeat removal, severing the claims from one another, and remanding the claims brought against the non-diverse defendants.  *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006); *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002); *Global Oil Tools, Inc. v. Barnhill*, 2013 U.S. Dist. LEXIS 84697, at *14 (E.D. La. June 17, 2013); *Davis v. Cassidy*, 2011 U.S. Dist. LEXIS 143090, at *6-7 (E.D. La. Dec. 13, 2011); *Accardo v. Lafayette Ins. Co.*, 2007 U.S. Dist. LEXIS 6859, at *7-9 (E.D. La. Jan. 30, 2007).

34.    Improper joinder under *Tapscott* requires a two-step analysis: (1) a determination as to whether there has been "procedural" misjoinder pursuant to the relevant state or federal joinder law, and (2) a determination as to whether the misjoinder was egregious.  *See, e.g.*, *Texas Instruments Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147-48 (N.D. Tex. 2010). To determine whether joinder is improper under *Tapscott*, recent cases from this District have applied state law, "as it is the procedural law that governed the parties[ ] at the time that the suit

was originally filed." *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *15 (citing *Davis*, 2011 U.S. Dist. LEXIS 143090, at *3-4; *Accardo*, 2007 U.S. Dist. LEXIS 6859, at *4-5).[5]

35.     Here, the governing state law on improper joinder is Article 463 of the Louisiana Code of Civil Procedure, which provides:

> Two or more parties may be in the same suit, either as plaintiffs or as defendants, if:
>
> (1)     There is a community of interest between the parties joined;
>
> (2)     Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
>
> (3)     All of the actions cumulated are mutually consistent and employ the same form of procedure.[6]

A "community of interest" is found where the cumulated causes of action arise out of the same facts or present the same factual or legal issues. *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *16 (citing *Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So. 2d 144, 147 (La. 1975)). A community of interest exists only where enough factual overlap is present between the different actions or parties "to make it commonsensical to litigate them together." *Id.* (quoting *Mauberret-Lavie v. Lavie*, 2003-0099 (La. App. 4 Cir. 6/11/03), 850 So. 2d 1, 2). Moreover, for a true community of interest to exist, there must be shared or common liability respecting the subject matter at issue. *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *17-18, 20 (noting that "the common thread in all three of the aforementioned

---

[5]     Moreover, even if one were to apply the federal rules on joinder, the result would be the same. *See Defourneaux v. Metro. Prop. & Cas. Ins. Co.*, 2006 U.S. Dist. LEXIS 61550, at *2 n.2 (E.D. La. Aug. 30, 2006) (noting that "because the standards for joinder presented in Rule 20 of the Federal Rules of Civil Procedure and Article 463 of the Louisiana Code of Civil Procedure are very similar, there is not a material difference in the Court's application of these rules.").

[6]     Under Rule 20(a) of the Federal Rules of Civil Procedure, "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

cases [applying the improper joinder theory] is the court's recognition that the potential liability of one defendant was wholly independent of the other" and finding that the improperly joined claims at issue "will stand or fail on an independent determination of liability"); *Copellar v. Britt*, 188 So. 403, 405-06 (La. Ct. App. 2d Cir. 1939) (finding that defendants were improperly cumulated where they had no privity of contract, joint liability, or mutuality of interest).

36.     In this case, Plaintiff attempts to bring individual permit enforcement actions in one combined lawsuit against nineteen separate Defendants.  Critically, the Petition contains no allegations that the Defendants are jointly, severally, alternatively, or solidarily liable for the alleged permit violations, or that any of the Defendants was engaged in a conspiracy to violate the CZM laws or any identified permit(s).  As the *Tapscott* court held, where the claims alleged do not involve any joint liability or conspiracy, joinder is improper.  *Tapscott*, 77 F.3d at 1359-60.

37.     Indeed, the potential liability of each Defendant for its alleged violation of the CZM laws and its individually held permit(s) has no relation to the potential liability of any other Defendant, and no Defendant is subject to any liability for the claims asserted against any other Defendant.  As such, the "potential liability of one defendant [is] wholly independent of the other" and the claims "will stand or fail on an independent determination of liability," thus making it clear that they are improperly joined.  *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *17-18, 20.

38.     Further, there is insufficient factual and evidentiary overlap "to make it commonsensical" to litigate the claims against all of the Defendants together.  There are 1018 permits identified in Exhibit D, which were issued to individual entities, over the course of nearly three decades, for a wide range of unrelated activities covering independent geographic

areas.  The claims asserted in this single lawsuit are so factually disconnected that the misjoinder here was clearly egregious.  "When courts in th[e Eastern] district have considered egregiousness under Louisiana law, the focus has centered on the connection between the parties and the claims."  *Davis*, 2011 U.S. Dist. LEXIS 143090, at *17; *see also Accardo*, 2007 U.S. Dist. LEXIS 6859, at *17-20 (E.D. La. 2007) (finding egregious misjoinder when the only factual overlap among the actions was that the properties at issue were damaged by the same hurricanes).

39.    Additionally, the proof necessary to establish each Defendant's purported violations will be completely different.  For example, the permits themselves contain distinct guidelines and obligations, the Defendants will be subject to different regulatory standards based on the time period in which they operated, and the methods and activities of the Defendants will differ greatly depending on the time period in which they operated.  As the cumulated actions do not arise out of the same facts or present the same factual or legal issues, there is simply no "community of interest between the parties joined."

40.    This lawsuit is essentially nineteen separate permit enforcement actions, each with its own particular facts and legal issues.  And "[t]he rule in Louisiana and elsewhere is that a plaintiff cannot in the same suit join different defendants 'in separate causes of action.'" *Copellar v. Britt*, 188 So. at 406 (quoting *Dubuisson v. Long*, 143 So. 2d 494, 496 (La. 1932)).  The Plaintiff's improper joinder of nineteen wholly separate and independent actions with no real connection to one another constitutes egregious misjoinder under *Tapscott* such that removal of this action is proper.  *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *20.

41.    Defendants who are improperly joined need not consent to removal.  *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

42.     As set forth herein, the claims at issue are improperly joined under *Tapscott* for purposes of removal.  Accordingly, the claims against each Defendant should be severed, and diversity jurisdiction under 28 U.S.C. § 1332 exists as between the Plaintiff and the diverse Defendants.  *Global Oil Tools, Inc.*, 2013 U.S. Dist. LEXIS 84697, at *20-21; *Davis*, 2011 U.S. Dist. LEXIS 143090, at *19-20; *Accardo*, 2007 U.S. Dist. LEXIS 6859, at *35-36.  As to the non-diverse Defendants, independent grounds of jurisdiction exist as detailed below.

C.      **Amount in Controversy**

43.     The amount in controversy arising from the Plaintiff's allegations exceeds $75,000, exclusive of interest and costs.  Pursuant to Louisiana law, Plaintiff did not demand a specific dollar amount; however, Plaintiff seeks, among other things, all damages and remedies appropriate under the CZM Laws, including, but not limited to:

- Restoration and remediation costs;

- Actual restoration of disturbed areas to their original condition;

- Costs necessary to clear, revegetate, detoxify and otherwise restore the affected portions of the Plaquemines Parish Coastal Zone as near as practicable to its original condition pursuant to LAC 43:I.705.N, 711.F and 719.M;

- Declaratory relief in circumstances where such relief is required, in addition to money damages, to accomplish the purposes of La. R.S. 49:214.21, *et seq.*;

- Costs and expenses of litigation, including costs of environmental assessments and expert costs, and reasonable attorney's fees; and

- All other damages or remedies provided for in La. R.S. 49:214.21, *et seq.*

Petition, ¶ 34.  Given the broad scope and nature of the relief requested, the Removing Defendants aver that it is facially apparent that the amount in controversy exceeds $75,000,

exclusive of interest and costs.

II.    **Removal Is Proper Under 43 U.S.C. § 1349(b)(1) and 28 U.S.C. § 1441(a) Because this Action Arises "In Connection With" Oil and Gas Operations Conducted on the Outer Continental Shelf.**

    A.    **Legal Standard Under OCSLA**

44.    The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* ("OCSLA"), provides that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition." 43 U.S.C. § 1332(1). The OCSLA asserts exclusive federal question jurisdiction over the Outer Continental Shelf by extending "[t]he Constitution and laws and civil and political jurisdiction of the United States . . . [to the Outer Continental Shelf] and all installations and other devices permanently or temporarily attached to the seabed . . . for the purpose of exploring for, developing, or producing resources therefrom." 43 U.S.C. § 1333(a)(1).

45.    A plaintiff need not expressly invoke the OCSLA for it to provide a basis for federal jurisdiction. *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988).

46.    43 U.S.C. § 1331(m) provides that "[t]he term 'production' means those activities which take place after the successful completion of any means for the removal of minerals, including such removal, field operations, [and] *transfer of minerals to shore*." *Id.* (emphasis added). "Development" is defined as "those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and *operation of all onshore support facilities*, and which are for the purpose of ultimately producing the minerals discovered . . . ." 43 U.S.C. § 1331(l) (emphasis added).

47.    43 U.S.C. § 1349(b)(1) provides that "the district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* [ ] any operation

conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." *Id.* (emphasis added).

48.   The Fifth Circuit has adopted a broad reading of the phrase "arising out of, or in connection with" as used in 43 U.S.C. § 1349(b)(1). *See EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (the phrase "arising out of, or in connection with" is "undeniably broad in scope"). "Just as clearly," the Fifth Circuit has found, "*any dispute that alters the progress of production activities* on the [Outer Continental Shelf] threatens to impair the total recovery of the federally-owned minerals from the reservoir or reservoirs underlying the [Outer Continental Shelf]. Such a dispute was intended by Congress to be within the grant of federal jurisdiction contained in § 1349." *Sea Robin*, 844 F.2d at 1210 (emphasis added). Courts have emphasized that "OCSLA confers original jurisdiction in controversies which are *indirectly connected* with operations on the outer Continental Shelf conducted for the purpose of developing natural resources." *Wilson Indus., Inc. v. Aviva Am., Inc.*, 63 F. Supp. 2d 747, 749 n.1 (E.D. La. 1998) (emphasis added); *cf. United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (noting that although the dispute was "one step removed from the actual transfer of minerals to shore since it involve[d] a contractual dispute over the control of an entity which operate[d] a gas pipeline," the dispute fell within OCSLA's grant of jurisdiction because "the resolution of the dispute would affect the exploitation of minerals on the outer continental shelf").

**B.    The Complained-Of Permitted Activity Is Connected To Operations on the Outer Continental Shelf**

49.   The Petition alleges that "certain of Defendants' oil and gas exploration, production and transportation operations associated with the development of the Coquille Bay,

Delta Duck Club, Grand Bay, Main Pass Block 47, Main Pass Block 69, Raphael Pass, and Romere Pass Oil & Gas Fields [the "Oil Fields"] in Plaquemines Parish were conducted in violation of the CZM Laws and that these activities caused substantial damage to land and waterbodies located in the '**Coastal Zone**' . . . as defined by the CZM Act of 1978, within Plaquemines Parish."  Petition, ¶ 3.  The Petition asserts that the CZM Laws regulate certain "uses" within the Coastal Zone, which include dredge and fill activity, all mineral activities including exploration for, and production of, oil, gas and other minerals, and all pipelines for the gathering, transportation or transmission of oil, gas and other materials, and that Defendants must obtain coastal use permits for such activities.  Petition, ¶ 7.  According to Plaintiff, Defendants have engaged in such "uses" in violation of the CZM Laws.  Petition, ¶ 14.

50.    Further, Plaintiff's allegations focus on an "Operational Area," defined as the "geographic extent of the area within which the complained-of operations and activities occurred."  Petition, ¶ 3.  The areal extent of the Operational Area is shown on Exhibit B to the Petition.  The coastal use permits that Plaintiff claims Defendants violated are depicted on the map annexed to the Petition as Exhibit C and are listed on Exhibit D to the Petition.  The Operational Area depicted on Exhibit B includes several hundred oil and gas wells that were allegedly operated by Defendants and which are listed on Exhibit F.

51.    The permits identified in Exhibits C and D were issued for work associated with oil and gas activities within the Operational Area.  These permits cover construction, modification, maintenance, and other work required to operate a complex, integrated system of wells, oil and gas fields, processing facilities, canals and offshore and onshore pipelines that operate within and across the Operational Area.  As detailed below, these permitted activities include the construction, maintenance and use of offshore pipelines that run from federal waters

to onshore and traverse the Operational Area carrying oil and gas products from the Outer Continental Shelf to onshore facilities, and/or onshore pipelines that carry Outer Continental Shelf product. Within the Operational Area, some of these pipelines connect with onshore pipelines that service the onshore wells and storage facilities, processing plants and other facilities operated by Defendants. Attached hereto as Exhibit "D" is a copy of Exhibit C to the Petition in which permitted Outer Continental Shelf pipeline(s) and/or onshore pipeline(s) carrying Outer Continental Shelf product that traverse the Operational Area are highlighted in green and identified by permit number. The allegedly violated permits also cover onshore transmission and production pipelines that move petroleum products from certain wells located within the Operational Area to refineries, processing plants, and other facilities and connect up with offshore pipelines that originate on the Outer Continental Shelf, and/or pipelines carrying offshore oil. The wells, processing plants and other facilities within the Operational Area, as well as the canals, are also covered by permits listed in Exhibit D. It is apparent that the allegedly violated permits cover virtually every aspect of oil and gas activities within the Operational Area.

52.    For reasons of economics, environmental considerations, geographic proximity and convenience, oil and gas being extracted from onshore wells, including those located within the Operational Area, frequently must be transported, processed and stored by means of the same onshore transmission and production pipelines, canals, processing facilities, pump stations, and interconnection facilities used to transport, process and store oil and gas produced offshore from federal leases located on the Outer Continental Shelf. For this reason, these coastal facilities, including those located within the Operational Area, are vital to ensure that oil and gas from

offshore federal leases can reliably continue to be produced without interruption, reduction, or impairment.

53.    Plaintiff further alleges that even as to those pipelines and other portions of Defendants' oil and gas infrastructure that are not subject to state coastal use permits because they were constructed prior to 1978, "most, if not all" of Defendants' operations or activities complained of in the Petition were prohibited "by various provisions of Louisiana Statewide Orders 29, 29-A, and 29-B, various field wide orders, as well as various orders of the Louisiana Stream Control Commission."  Petition, ¶ 29.  Therefore, Plaintiff's allegations are not limited to alleged violations of the permits identified in Exhibits C and D and, instead, also target other activities in the Operational Area – including Defendants' use of offshore and onshore pipelines that carry oil from the Outer Continental Shelf through the Operational Area that are not governed by coastal use permits.

### C.    The Relief Plaintiff Seeks Would Affect Operations on the Outer Continental Shelf

54.    As noted above, the Petition broadly alleges that Defendants conducted their oil and gas activities in the Operational Area in violation of the coastal use permits identified in Exhibits C and D and state law.  *See, e.g.*, Petition, ¶ 3 ("Defendants' oil and gas exploration, production and transportation operations" were "conducted in violation of the CZM Laws and . . . caused substantial damage to land and waterbodies located" in the Coastal Zone); *id.* ¶ 14. Among Defendants' purported violations are, without limitation, failing to "obtain[] the required state and/or local coastal use permits for the deposition or storage of contamination . . . in the Operational Area," Petition, ¶ 24, allowing "the Plaquemines Parish Coastal Zone . . . to become contaminated or polluted," *id.*, and failing "to clear, revegetate, detoxify, and restore the mineral and production sites and other areas affected by their operations and activities within the

Operational Area to their original condition . . . ."  Petition, ¶ 16.  Plaintiff also identifies Defendants' activity relating to dredging and fill operations conducted in the Operational Area as an alleged source of widespread violations of the CZM Laws and other state law.  Petition, ¶ 25 (in "dredging . . . numerous canals in, through, and across the Operational Area," Defendants allegedly failed to "design, construct and maintain said canals" in the manner required to prevent "bank slumping, erosion and saltwater intrusion" and to "minimize the potential for inland movement of storm-generated surges" and "in some instances exceeded the limits of the coastal use permits" authorizing the dredging of canals).

55.    Citing La. R.S. 49:214.36, Plaintiff claims that it is authorized to bring "appropriate actions in its own behalf and in the name of the State of Louisiana for enforcement of the CZM Laws."  Petition, ¶ 10.  Based on this authority, Plaintiff seeks extremely broad remedies against Defendants, including "declaratory, civil damages, or other actions as are necessary to ensure that no uses of state or local concern 'are made of the coastal zone for which a coastal use permit has not been issued when required or which are not in accordance with the terms and conditions of a coastal use permit.'"  *Id.* (quoting La. R.S. 49:214.36(D)).  Plaintiff further asks the Court to require Defendants to take all necessary steps to restore "disturbed areas to their original condition" and to award "costs necessary to clear, revegetate, detoxify and otherwise restore the affected portions of the Plaquemines Parish Coastal Zone as near as practicable to its original condition . . . ."  Petition, ¶ 34; *see also* Prayer For Relief ¶ (c) (seeking judgment "[r]equiring actual restoration of the Plaquemines Parish Coastal Zone to its original condition").  Plaintiff thus seeks the clearing and restoration to their original condition of all portions of the Plaquemines Parish Coastal Zone "affected by" Defendants' oil and gas exploration and production activities within the Operational Area.  Petition, ¶ 31.

56.     Plaintiff's requested relief (*i.e.*, the return of the Operational Area to its original, undisturbed condition) if granted, would have a significant adverse impact – both direct and indirect – on oil and gas production far beyond the Operational Area itself.  Most important here, such relief, including (but not limited to) the dismantling and removal of permitted offshore pipelines that transport oil and gas from the Outer Continental Shelf through the Operational Area and/or permitted onshore pipelines that carry offshore product through the Operational Area (such as the pipeline(s) depicted in Exhibit "D" attached hereto), and other actions impacting the continued operation of permitted facilities and infrastructure located within the Operational Area would threaten and impair the efficient exploitation of the minerals of the Outer Continental Shelf.  Some of these pipelines and infrastructure move oil and gas produced from the Outer Continental Shelf to processing and storage facilities located within the Operational Area, while others move such oil and gas through the Operational Area to another location.  In either case, removing the permitted Outer Continental Shelf-associated pipelines and/or the associated permitted infrastructure would impair or interfere with the transport, processing and storage of oil and gas from offshore waters to onshore.  Likewise, the removal of onshore permitted pipelines that connect with or traverse offshore pipelines or that carry offshore product from terminals and other facilities along the coast would threaten to interfere with, interrupt or otherwise disrupt the production and transportation of oil and gas from the Outer Continental Shelf.

57.     Plaintiff's allegations and the relief sought in the Petition thus "aris[e] out of" and "in connection with" operations conducted on the Outer Continental Shelf because Plaintiff challenges activities related to various components of this dense, highly integrated and interconnected infrastructure (virtually every aspect of which is authorized by coastal use

permits) that includes, *inter alia*, pipelines and canals that work together to transport oil and gas from the Outer Continental Shelf – as well as from wells in the Oil Fields – into and through the Operational Area to be processed and ultimately brought to market.

58.    Accordingly, 43 U.S.C. § 1349(b)(1) grants original jurisdiction in federal court over this action.

59.    Under 28 U.S.C. § 1441(a), "except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

60.    Because this is a case covered by 43 U.S.C. § 1349(b)(1), this civil action is removable to this Court on this independent ground alone. *See Barker v. Hercules Offshore Inc.*, 713 F.3d 208 (5th Cir. 2013).

**III.    Removal Is Proper Under 28 U.S.C. §§ 1333 and 1441(a) Because the Petition Asserts General Maritime Claims.**

61.    "A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extend[s]' federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.'" U.S. Const., Art. III, § 2; *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995). "Congress has embodied that power in a statute giving federal district courts 'original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . .'" 28 U.S.C. § 1333(1); *see also Grubart*, 513 U.S. at 531.

62.    A party seeking to invoke federal admiralty jurisdiction under 28 U.S.C. § 1333(1) "must satisfy conditions both of location and of connection with maritime activity." *Grubart*, 513 U.S. at 534.  In applying the location test, a court must determine whether the

conduct complained of occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. *Id.* at 534 (citing 46 U.S.C. App. § 740 (now 46 U.S.C. § 30101)). In applying the connection test, a court must first assess the "general features of the type of incident involved" to determine if the incident has "a potentially disruptive impact on maritime commerce," and then determine whether the character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Grubart*, 513 U.S. at 534.

63.    Both tests are easily satisfied here. Many of the injuries alleged by Plaintiff have allegedly occurred and continue to occur on navigable waters. Specifically, the Petition alleges that "Defendants' oil and gas exploration, production and transportation operations associated with the development of the Coquille Bay, Delta Duck Club, Grand Bay, Main Pass Block 47, Main Pass Block 69, Raphael Pass, and Romere Pass Oil & Gas Fields in Plaquemines Parish were conducted in violation of CZM Laws and that these activities caused substantial damage to land and waterbodies located in the '**Coastal Zone**' . . . ." Petition, ¶ 3. According to the Petition, the Coastal Zone contains "'the coastal waters and adjacent shorelands within the boundaries of the coastal zone . . . .' The term 'coastal waters' includes 'bays, lakes, inlets, estuaries, rivers, bayous and other bodies of water within the boundaries of the coastal zone which have measurable seawater content . . . .'" Petition, ¶ 5. The Petition further alleges that the CZM laws regulate certain uses which "directly and significantly affect coastal waters" and which include "dredge or fill activity which intersects with more than one water body," "projects involving use of state owned land or water bottoms," "all mineral activities, including exploration for, and production of oil, gas, and other minerals, all dredge and fill uses associated

therewith, and all other associated uses," "dredge and fill projects not intersecting more than one water body," and "maintenance dredging." Petition, ¶¶ 7, 8.

64.    Plaintiff complains that Defendants' oil and gas activities have resulted in "the dredging of numerous canals in, through and across the Operational Area" which has a "direct and significant impact on the state coastal waters" within the Parish and which has caused damage including bank slumping, erosion, and salt water intrusion.  Petition, ¶ 25.

65.    In addition, Plaintiff claims that through dredging activity, Defendants have failed to avoid adverse impacts including alterations in the concentration of oxygen in coastal waters, destruction or adverse alteration of streams, wetland, tidal passes, inshore waters and waterbottoms, beaches, dunes, barrier islands as well as other damage.  Petition, ¶ 26.

66.    Plaintiff claims damages under permits issued for dredging by vessels on navigable water.  Thus, Plaintiff's claims sound in maritime law, *Grubart*, 513 U.S. at 534, giving rise to Admiralty and Maritime Jurisdiction arising under Article III, section 2 of the United States Constitution, 28 U.S.C. § 1333, 46 U.S.C. § 30101, and Rule 9(h) of the Federal Rules of Civil Procedure.

67.    Before January 2012, courts interpreted 28 U.S.C. § 1441(a) to provide that a general maritime claim could be removed only when there was a separate basis for federal jurisdiction.  However, 28 U.S.C. § 1441 was amended in 2011 as a part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. 394, P.L. 112-63.  The amendment removes the language in section 1441(a) that had been interpreted as barring removal of federal maritime cases absent a separate basis for jurisdiction.  *See Ryan v. Hercules Offshore, Inc.*, No. H-12-3510, 2013 WL 1967315 (S.D. Tex. May 13, 2013); *Wells v. Abe's Boat Rentals Inc.*, No. H-13-1112, 2013 WL 3110322 (S.D. Tex. June 18, 2013);  *Bridges v. Phillips 66 Company*, No.

13-477, 2013 WL 6092803 (M.D. La. Nov. 18, 2013) (denying remand based on 2011 revision to 28 U.S.C. § 1441 eliminating requirement for separate jurisdictional basis).

68.     Section 1441(a) currently states:  "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."   Accordingly, the case is removable because it asserts general maritime claims.

## IV.    Removal of this Action is Proper Under the Class Action Fairness Act.

69.     CAFA reflects Congress' intent to have federal courts adjudicate substantial suits brought by or on behalf of numerous plaintiffs against out-of-state defendants.  Toward that end, CAFA gives federal courts jurisdiction over not just "class actions," but also "mass actions" which are defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ." 28 U.S.C. § 1332(d)(11)(B)(i).  Section 1332(d)(11)(A) provides that a mass action is removable as a class action if it otherwise meets the requirements of § 1332(d)(2) through (10), which includes, for example, the requirements that the matter in controversy exceed the sum of $5 million and that there be minimal diversity.  Here, all of those requirements are satisfied, and removal is proper.

70.     **Monetary Relief.**  The causes of action in the Petition request money damages, restoration and remediation costs, and declaratory relief. *See, e.g.*, Petition, ¶¶ 10, 16, 17, 22, 23, 30.  In addition, the Petition seeks an award of attorney's fees.  *See, e.g.*, Petition, ¶¶ 32, 34.  For all of these reasons, the "monetary relief" requirement of 28 U.S.C. § 1332(d)(11)(B)(i) is satisfied.

71.    **Numerosity (100 or more persons)**.    CAFA also includes a numerosity requirement that the case involve claims of 100 or more persons.  28 U.S.C. § 1332(d)(11)(B)(i). In *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008) ("*Allstate*"), the Fifth Circuit stated that it is "well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach" to determine who are real parties in interest.  *Id.* at 424.  The Fifth Circuit stressed that it is particularly important to do so when a case is removed under CAFA because CAFA was specifically designed to prevent "jurisdictional gamesmanship" by clever plaintiffs.  *Id.*  The *Caldwell* court looked at the petition and determined that while there was only a single named plaintiff (the State of Louisiana) and while the state did have some interests at stake in the lawsuit, it could not be said that the State was the "only" real party in interest; instead more than 100 individual policyholders were also "real parties in interest."  *Id.* at 430.  Similarly, in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012), *cert. granted*, 133 S. Ct. 2736 (2013), the Fifth Circuit found that "real parties in interest in this suit include both the State and individual consumers of LCD products" and because there were more than 100 consumers of LCD products, the CAFA mass action numerosity requirement was satisfied.  *Id.* at 802.

72.    The same is true here.  The Plaintiff may have some interests at stake in this action, but unquestionably, the landowners are also real parties in interest insofar as they own properties that are alleged to be damaged.  Indeed, the map of the Coastal Zone identified in Exhibit A to the Petition includes numerous properties owned by individual landowners.  *See* Petition, Ex. A.  The Petition alleges that Defendants' activities have affected the entire

Plaquemines Parish Coastal Zone, which includes the properties belonging to the landowners. *See, e.g.*, Petition, ¶¶ 3, 18, 22, 23, 24, 25, 31.

73.     Additionally, the landowners unquestionably will benefit from the relief requested in the Petition, which is directed at repairing, restoring, and remediating all the properties located in the Coastal Zone.  Petition, ¶ 34 and Prayer for Relief.  Accordingly, the landowners in the Coastal Zone are real parties in interest for the purposes of the CAFA numerosity requirement.

74.     On information and belief, the landowners include at least 100 property owners whose properties fall within the area allegedly damaged as a result of the alleged activities of the Defendants.

75.     **Commonality**.  CAFA includes a requirement that the plaintiff propose to try the claims of the 100 or more people "jointly on the ground that the potential claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(B)(i).  Here, the Plaintiff proposes that this single lawsuit require Defendants to pay moneys and remediate the Coastal Zone to restore property belonging to all the landowners in the Coastal Zone who are real parties in interest.  Thus, this requirement is met.

76.     **Amount in Controversy ($5 million).**  CAFA requires that the aggregate matter in controversy exceeds $5 million.  28 U.S.C. §§ 1332(d)(2), 1332(d)(11)(A).  Here, there is no question that the Plaintiff and the landowners seek to have Defendants pay over $5 million.  The restoration and remediation costs, actual restoration of disturbed areas, payment of costs to clear, revegetate, detoxify, and otherwise restore the affected portions of the Coastal Zone will exceed $5 million.  *See* Petition, ¶ 34 and Prayer for Relief.  In addition, the Petition seeks attorney's fees, which alone could be over $5 million.  *See Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 873 (5th Cir. 2002).  Accordingly, the purported damages and attorney's fees in this

matter satisfy the amount in controversy requirement.  For all of these reasons, the $5 million amount in controversy requirement is met.

77.      **Amount in Controversy ($75,000).**  A federal court's jurisdiction in a CAFA mass action "shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."  28 U.S.C. § 1332(d)(11)(B)(i).  The jurisdictional amount requirement in § 1332(a) is that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  The landowners who are real parties in interest share a "common and undivided interest" in the relief sought in this lawsuit, and therefore the aggregate amount in controversy in this case (which, as noted above, is clearly over $5 million) is the amount in controversy for each and every real party in interest, thus satisfying this requirement.  *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1330 (5th Cir. 1995); *see also Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973); *Troy Bank of Troy, Indiana v. G. A. Whitehead & Co.*, 222 U.S. 39, 40-41 (1911).  Alternatively, the damage claimed on behalf of most, if not all, of the individual landowners separately meets the amount in controversy requirement inasmuch as the combined value of the property and the cost of restoring or remediating the individual property at issue combined is in excess of $75,000.  In addition, the value of the other relief sought on behalf of each of the landowners is in excess of $75,000.  *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *see also Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) ("The amount in controversy is 'the value of the right to be protected or the extent of the injury to be prevented.'") (quoting *Leininger v. Leininger*, 705 F.2d

727, 729 (5th Cir.1983)).   For all of these reasons, the $75,000 amount in controversy requirement is met.

78.   **Minimal Diversity.**  CAFA further contains a minimal diversity requirement that is met if any plaintiff is a citizen of a state different from any defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(11)(A).  At least some of the landowners are citizens of Louisiana, and additionally, the Plaintiff is a "political subdivision of a State" and therefore is "a citizen of the State for diversity purposes." *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973).  BP America Production Company is a citizen of Delaware and Texas for purposes of federal diversity jurisdiction.  Burlington Resources Oil & Gas Company LP is a citizen of Delaware and Texas for purposes of federal diversity jurisdiction.  Chevron U.S.A. Inc. is a citizen of Pennsylvania and California for purposes of federal diversity jurisdiction.  Exxon Mobil Corporation is a citizen of New Jersey and Texas for purposes of federal diversity jurisdiction. Chevron U.S.A. Holdings Inc. is a citizen of Delaware and California for purposes of federal diversity jurisdiction.  Shell Offshore, Inc. is a citizen of Delaware and Texas for purposes of federal diversity jurisdiction.  Shell Oil Company is a citizen of Delaware and Texas for purposes of federal diversity jurisdiction.  Chevron Pipe Line Company is a citizen of Delaware and California for purposes of federal diversity jurisdiction.  The Texas Company is a citizen of Texas and New York for purposes of federal diversity jurisdiction.  Moreover, of the nineteen Defendants in this lawsuit, approximately seven others are not Louisiana citizens.  *See* ¶¶ 12-27, *supra*.  Thus, the minimal diversity requirement is satisfied.

## IV.   Removal of this Action is Proper Based on Federal Enclave Jurisdiction Because Plaintiff's Claims Arise out of Conduct in the Delta National Wildlife Refuge.

79.   "Federal enclave jurisdiction is a subspecies of federal question jurisdiction, which is a form of subject matter jurisdiction vested in federal district courts by 28 U.S.C. §

1331." *Lawler v. Miratek Corp.*, No. 09-252, 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010).

Because Congress has been granted exclusive legislative power over federal enclaves, federal

courts have subject matter jurisdiction over actions that arise on federal enclaves. *Mater v.*

*Holley*, 200 F.2d 123, 124-125 (5th Cir. 1953); *Wood v. Am. Crescent Elevator Corp.*, No. 11-

397, 2011 WL 1870218, at *2 (E.D. La. May 16, 2011).

80.    There are three requirements for federal enclave jurisdiction to apply. First, the

United States must have acquired land in a state for the purpose of erecting forts, magazines,

arsenals, dockyards, or other needful buildings, and this federal land must have some connection

to the claims in the case. *Wood*, 2011 WL 1870218, at *2. The entire claim need not be

confined to a federal enclave. Federal jurisdiction is conferred if some of the events or claims

alleged in the petition occurred on a federal enclave. *See, e.g.*, *Corley v. Long-Lewis, Inc.*, 688

F. Supp. 2d 1315, 1336 (N.D. Ala. 2010); *see also Reed v. Fina Oil & Chem. Co.*, 995 F.Supp.

705, 713 (E.D. Tex. 1998).

81.    The second requirement is that the state legislature must have consented to the

jurisdiction of the federal government. *See Wood*, 2011 WL 1870218, at *2. The third

requirement is that the United States accepted jurisdiction. *Wood*, 2011 WL 1870218, at *2

(quoting 40 U.S.C. § 3112(b)).

82.    All three requirements are met in this case. The first requirement is met because a

large number of the allegations made in the petition involve permits for activity in the Delta

National Wildlife Refuge ("Delta NWR") which was established in 1935. The Delta NWR

consists of lands acquired by the United States before 1940 from private landowners and from

the Grand Prairie Levee District. *See Humble Pipeline Co. v. Waggonner*, 376 U.S. 369, 370

(1964).

83.    Plaintiff's Petition alleges that "certain of Defendants' oil and gas exploration, production and transportation operations associated with the development of Coquille Bay, Delta Duck Club, Grand Bay, Main Pass Block 47, Main Pass Block 69, Raphael Pass, and Romere Pass Oil & Gas Fields in Plaquemines Parish were conducted in violation of the CZM Laws and that these activities caused substantial damage to land and water bodies located within the **"Coastal Zone"** (hereinafter so called), as defined by the CZM Act of 1978, within Plaquemines Parish."    Petition, ¶ 3.    Further, the Plaintiff alleges that the **"Operational Area"** is the "geographic extent of the area within which the complained-of operations and activities occurred." *Id.*  The aerial extent of the Operational Area is shown on Plaintiff's Exhibit B to the Petition.  A map of the coastal use permits which form the basis of the Plaintiff's suit are shown on Plaintiff's Exhibit C to the Petition.  *Id*. at 7.  The Operational Area depicted on Exhibit B includes the Delta Duck Club, Raphael Pass and Romere Pass fields, all located within the Delta NWR.  The permits complained of shown on Exhibit C for those fields were all issued for work on the Delta NWR.

84.    The second requirement—that the removing defendants must show that the state legislature has consented to the jurisdiction of the federal government—is also met here.  A state may consent to federal jurisdiction by enacting legislation that cedes jurisdiction to the United States.  *See Dekalb County, Georgia v. Henry C. Beck Co.*, 382 F.2d 992, 994-95 (5th Cir. 1967); *Fort Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 541-42 (1885).  Louisiana has passed a statute that cedes jurisdiction to the United States as to all federal lands in the state.  It consented to the jurisdiction of the United States by enacting section 52.1(A) of the Louisiana Revised States, which provides in pertinent part:

> The United States in accordance with the seventeenth clause, eighth section of the
> first article of the Constitution of the United States, may acquire and occupy any

> land in Louisiana required for the purposes of the federal government. The United
> States shall have exclusive jurisdiction over the property during the time that the
> United States is the owner or lessee of the property.

La. Rev. Stat. § 52.1(A).  Courts have held that this section explicitly cedes jurisdiction from the

State of Louisiana to the United States for land acquired by the United States in Louisiana.  *See*

*Wood*, 2011 WL 1870218, at *2.  Thus, this requirement is automatically met as to all federal

lands in Louisiana.

85.     The third requirement—that the federal government must have accepted exclusive

jurisdiction—is met because the Delta NWR was established in 1935.  If the government

acquired the property before 1940, acceptance is presumed.  *See United States v. Gabrion*, 517

F.3d 839, 848 (6th Cir. 2008).

## V.    The Court Has Subject Matter Jurisdiction Over This Case Under 28 U.S.C. § 1331 Pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717w.

86.     The Natural Gas Act, 15 U.S.C. §§ 717-717w ("NGA"), as administered by the

Federal Energy Regulatory Commission (FERC), provides the framework for a "comprehensive

scheme of federal regulation" applicable to natural gas companies engaged in the transportation

of natural gas in interstate commerce.  *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300

(1988) (quoting *N. Natural Gas Co. v. State Corp. Comm'n of Kan.*, 372 U.S. 84, 91 (1963)).

This framework includes a detailed certification process administered by FERC (with input from

other federal agencies) that applies to any natural gas company that intends to "construct[],

extend[], acquire[], or operate[] any facility for the transportation or sale of natural gas in

interstate commerce."  *Id.* at 302 (citing 15 U.S.C. § 717f(c)(1)(A)); see also 15 U.S.C. §

717n(b)(1).  Through the certificates it issues, FERC retains jurisdiction over the certificated

operations of natural gas companies.  *See generally* 18 C.F.R. Part 157.

87.    A "natural gas company" is defined under the NGA as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale."  15 U.S.C. § 717a(6).

88.    In the Petition, Plaintiff has named Chevron Pipe Line Company as a Defendant, supposedly "as successor in interest to **Gulf Refining Company**."   Petition, ¶ 2 (emphasis in original).  Chevron Pipe Line Company is ***not*** a successor in interest to Gulf Refining Company with respect to any of the exploration and production interests that entity possessed.  Rather, Chevron Pipe Line Company is a successor in interest only with respect to Gulf Refining Company's interests related to the transportation of oil and gas.  Thus, as pled in the Petition, it would appear that Plaintiff seeks to have liability imposed against Chevron Pipe Line Company based on "transportation operations," Petition, ¶ 3, that involved movement of natural gas in interstate commerce.  Quite simply, the Petition appears to seek an award of damages from a natural gas company, as defined under the NGA, based on operations that are the subjects of a detailed federal regime.

89.    Accordingly, this Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the NGA.[7]   Federal courts have authority to "hear claims recognized under state law" when (1) resolving a federal issue is necessary to resolve a state-law claim, (2) the federal issue is actually disputed, (3) the federal issue is substantial, and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.  *Grable &*

---

[7]    Specifically, the NGA provides:  "The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder."  15 U.S.C. § 717u.

*Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Hughes v. Chevron Phillips Chem. Co.*, 478 Fed. App'x 167, 170 (5th Cir. 2012). All four criteria are met here.

90.     Plaintiff's allegations require adjudication of substantial and disputed issues of federal law. Plaintiff seeks damages from a natural gas company that has been engaged in operations under, and in compliance with, the NGA and other federal laws. Plaintiff's claims and requested relief propose to interfere with the jurisdiction conferred on FERC by federal statutes and regulations to administer operations of entities engaged in the transportation of natural gas in interstate commerce.

91.     The Petition thus directly implicates the workings of interstate commerce, in which the interest of the federal government is substantial, as aptly demonstrated by the detailed regime set out in the NGA and the federal regulations implementing it. The potential impact of Plaintiff's action on interstate commerce extends far beyond the confines of this particular case, and thus necessitates uniformity of decisions in the federal courts rather than piecemeal adjudication by state courts. This case properly belongs in federal court, and this Court's exercise of jurisdiction will not disturb the balance of federal and state judicial responsibilities.

92.     The Removing Defendants reserve the right to amend or supplement this Notice of Removal.

**WHEREFORE,** the Removing Defendants pray that this Court recognize jurisdiction over this action and that the suit be removed to this Court for further proceedings in accordance with law.

Respectfully submitted,

/s/ George Arceneaux_____
George Arceneaux III (Bar No. 17442)
garceneaux@liskow.com
Penny L. Malbrew (Bar No. 31247)
plmalbrew@liskow.com
**LISKOW & LEWIS**
822 Harding Street
P.O. Box 52008
Lafayette, Louisiana  70505
Telephone: (337) 232-7424
Facsimile:  (337) 267-2399

-and-

Joe B. Norman (Bar No. 8160)
jbnorman@liskow.com
K. Todd Wallace (Bar No. 25920)
ktwallace@liskow.com
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

***Attorneys for BP America Production Co.***

/s/ Leigh Ann Schell_____
Deborah D. Kuchler, T.A. (#17013)
Janika D. Polk (#27608)
Leigh Ann Schell (#19811)
Michele Hale DeShazo (#29893)
1615 Poydras Street
Suite 1300
New Orleans, LA  70112
T. 504-592-0691
F. 504-592-0697
Email: dkuchler@kuchlerpolk.com
         jpolk@kuchlerpolk.com
         lschell@kuchlerpolk.com
         mdeshazo@kuchlerpolk.com

***Attorneys for Burlington Resources Oil & Gas
Company LP***

**KEAN MILLER LLP**

/s/ L. Victor Gregoire
L. Victor Gregoire (#22400)
victor.gregoire@keanmiller.com
Pamela R. Mascari  (#25162)
pam.mascari@keanmiller.com
Claire E. Juneau (#33209)
claire.juneau@keanmiller.com
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

-and-

**KEAN MILLER LLP**
Michael R. Phillips (#21020)
mike.phillips@keanmiller.com
Michelle P. Cumberland (#30681)
michelle.cumberland@keanmiller.com
909 Poydras, Suite 3600
New Orleans, LA 70112
Telephone:  (504) 585-3050
Facsimile:  (504) 585-3951

*Attorneys for Chevron U.S.A. Inc., Chevron*
*U.S.A. Holdings Inc., Chevron Pipe Line*
*Company and The Texas Company*

/s/ Robert B. McNeal
**ROBERT B. MCNEAL (Bar No. 74211)**
Liskow & Lewis
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

**MICHAEL P. CASH (Bar No. 31655)**
Liskow & Lewis
First City Tower
1001 Fannin Street
Houston, TX 77002-6756
Telephone:  (713) 651-2900
Facsimile:  (713) 651-2908

**JAMIE D. RHYMES (Bar No. 24621)**
Liskow & Lewis
822 Harding Street
Lafayette, LA 70503
Telephone:  (337) 232-7424
Facsimile:  (337) 267-2399

and

Martin A. Stern (#17154)
Glen M. Pilié (#1539)
Jeffrey E. Richardson (#23273)
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210

*Attorneys for Exxon Mobil Corporation*

/s/ R. Keith Jarrett
R. Keith Jarrett (Bar #16984)
rkjarrett@liskow.com
Mark L. McNamara (Bar #25170)
mlmcnamara@liskow.com
Dana M. Douglas (Bar #26866)
dmdouglas@liskow.com
Kelly Brechtel Becker (Bar #27375)
kbbecker@liskow.com
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

***Attorneys for Shell Oil Company and Shell Offshore, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

/s/ George Arceneaux